**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

DEENA HARTLINE,

    Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

    Defendant.

Civil Action No. 06-219 (CKK)

**MEMORANDUM OPINION**
(March 31, 2009)

Plaintiff Deena Hartline brings this action seeking review of Defendant's final

administrative decision denying her claim for Disability Insurance Benefits ("DIB") and

Supplemental Security Income Benefits ("SSIB") pursuant to 42 U.S.C. § 405(g).  Pending

before the Court are Plaintiff's Motion for Judgment of Reversal and Defendant's Motion for

Judgment of Affirmance.  After reviewing the Parties' briefs, the administrative record, and the

relevant case law, the Court shall DENY [7] Plaintiff's Motion for Judgment of Reversal and

GRANT [10] Defendant's Motion for Judgment of Affirmance, for the reasons that follow.[1]

## I.  BACKGROUND

*A.*    *Legal Framework and Procedural History*

Plaintiff Deena Hartline petitioned the Social Security Administration for DIB and SSIB

pursuant to Titles II and XVI of the Social Security Act on July 21, 1998.  *See* Pl.'s Mot. at 1.  To

---

[1] Plaintiff's Complaint named as the Defendant the then-Commissioner of Social
Security, Jo Anne B. Barnhart.  As Ms. Barnhart was sued in her official capacity, the Court has
substituted the current Commissioner of Social Security, Michael J. Astrue, as the Defendant
pursuant to Federal Rule of Civil Procedure 25(d).

qualify for SSIB and DIB, a claimant must demonstrate an "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment,"

coupled with an inability to "engage in any other kind of substantial gainful work which exists in

the national economy."  42 U.S.C. § 423(d)(1)-(2); *see id.* § 1382c(a)(3).  By satisfying both

conditions, a claimant is "disabled" for purposes of the Social Security Act.  To decide whether a

claimant has proven she is disabled, the ALJ must use a five-step sequential analysis.  20 C.F.R.

§§ 404.1520, 416.920.  The steps require a determination of (1) current work activity; (2)

severity of the impairments; (3) whether the impairment meets or equals a listed impairment; (4)

if the impairment prevents claimant from doing past work; (5) if the impairment prevents her

from doing other work upon consideration of the claimant's residual functional capacity

("RFC").  *Id.*

Plaintiff is a 41-year-old female resident of Washington, D.C.  *See* Pl.'s Mot. at 2.  A high

school graduate who attended college for one year, Plaintiff worked as a dancer, waitress and

office secretary for a cab company before her impairments allegedly rendered her unable to work

from May 22, 1997, until January 2002.  *Id.*; Administrative Record ("A.R.") at 84, 351, 366-70.

In her application for DIB and SSIB, Plaintiff alleged that her disabilities included low back pain,

leg pain, depression, anxiety and bipolar disorder.  *See* Pl.'s Mot. at 2; A.R. at 17.

Plaintiff's claims were initially denied. A.R. at 49, 53; *see id.* at 33 ("[y]our overall

medical condition does cause some restrictions. However, there are still some types of work you

can perform"); *id.* at 35 ("[w]e realize that your condition prevents you from doing the type of

work that you have done in the past, but it does not prevent you from doing less demanding

work").  Following this denial, Plaintiff requested a hearing before an Administrative Law Judge

("ALJ"). *Id.* at 56. That hearing occurred on August 8, 2000. *Id.* at 347. In a decision dated November 22, 2000, the ALJ denied Plaintiff's requested benefits. *Id.* at 39-48. Plaintiff sought review of this decision by the Appeals Council. *Id.* at 71. On March 26, 2004, the Appeals Council remanded the case to the ALJ with instructions to reevaluate Plaintiff's claim in light of additional medical evidence and issue a new decision. *Id.* at 77 ("This evidence relates to the severity of the claimant's affective disorder and lymphodema in her legs and may suggest severity greater than the Administrative Law Judge found. This evidence should be addressed and evaluated."). Accordingly, a second hearing before the ALJ was held on October 13, 2004. *Id.* at 364. Plaintiff was represented by counsel, and Kathleen S. Sampeck, a vocational expert ("VE"), testified. *Id.* at 364.

On February 28, 2005, the ALJ issued a decision that again denied Plaintiff's claim for benefits. A.R. at 16-24. At Step One, the ALJ noted that Plaintiff had been engaged in significant gainful activity since 2002.[2] *Id.* at 17; *see id.* at 369; Pl.'s Mot. at 2 n.1. At Step Two, he determined that the medical evidence established that Plaintiff suffered from "a 'severe' physical impairment as a result of "lymphedema and degenerative joint disease" and a "'severe' mental impairment at all times relevant to this decision." A.R. at 18. At Step Three, the ALJ determined that Plaintiff's impairments were not "manifested at a degree of severity which satisfie[d]" any of the Listings of Impairments at Appendix 1, Subpart P, No. 4 (20 C.F.R § 404.1520(d)). A.R. at 18. With regard to Plaintiff's physical condition, the ALJ found no

---

[2] Pursuant to 20 C.F.R. §§ 404.1520 and 416.920, the ALJ noted that "[i]f the claimaint is performing substantial gainful work, she is not disabled." *Id.* at 17. For reasons he did not articulate, however, the ALJ "elected to proceed with the five-step sequential evaluation." *Id.* The Court shall therefore address the same.

evidence that showed "she is unable to effectively ambulate or perform fine and gross movements effectively as defined by Listings 1.02A/B" nor evidence of "documented nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis to the degree required by Listing 1.04." *Id.* In evaluating Plaintiff's mental impairment, the ALJ found that "none of the functional limitation categories are manifested at a degree which satisfie[d]" Listings 12.04 or 12.08. *Id.* Specifically, the ALJ found that Plaintiff's impairment resulted in no more than moderate limitation on her "activities of daily living," "social functioning," "concentration, persistence and pace," and that no evidence showed a "deterioration or decompensation in work or work-like settings." *Id.* at 19.

At Step Four, the ALJ found that Plaintiff's past relevant work "would be precluded given her current level of restriction." *Id.* at 21. At Step Five, the ALJ determined, "based upon the claimant's residual functional capacity, that "she is capable of performing a significant range of light work . . . ." *Id.* at 22. *See generally* 20 C.F.R. §§ 404.1567, 416.967. Finding the VE's testimony credible as to the availability of jobs that fit within the above limitations in the economy, the ALJ concluded that "[the claimant] is capable of making a successful adjustment to work that exists in significant numbers in the national economy. A finding of 'not disabled' is therefore reached within the framework of Medical-Vocational Rule 202.20." A.R. at 23. Plaintiff sought review of this decision by the Appeals Council. *Id.* at 12. On December 8, 2005, the Appeals Council upheld the decision of the ALJ, finding no basis for granting the request for review. *Id.* at 7. Having exhausted her administrative remedies, Plaintiff has brought this action

seeking judicial review.[3]  Pl.'s Mot. at 1.

     *B.     Evidence Contained in the Administrative Record*

     The ALJ evaluated Plaintiff's condition based on evidence including various medical

records (both physical and mental health records) and the testimony of Plaintiff and the VE

during the administrative hearing in this case.  The Court recounts below the most relevant

portions of the administrative record.

     1.     <u>Physical Health Records</u>

     On July 23, 1997, Plaintiff began a series of hospital visits for her lower back pain.  *See*

A.R. at 145; 188.  Plaintiff indicated during these visits that her back pain, which had been a

recurring problem for the past several years, was triggered when she engaged in household

chores such as washing the dishes and mopping the floor.  *Id.* at 188.  While the examinations

revealed "tenderness on either side of the spine," the records indicated that Plaintiff was "[a]ble

to bend forward & straighten."  *Id.*  On July 15, 1997, Plaintiff began a series of visits in

connection with swelling and lesions on her legs and feet.  *Id.* at 173-86.  Plaintiff was diagnosed

---

[3] The Court notes that there is some inconsistency in the records as to whether Plaintiff seeks current disability benefits or benefits for a closed period of unemployment. According to the Complaint, "Plaintiff can no longer engage in her past relevant work or any other substantial gainful activity."  Pl.'s Compl. ¶ 5.  Plaintiff, however, currently works full-time as a phone operator for a cab company, and has been employed in such capacity since January 2002.  A.R. at 367-69.  Furthermore, at the most recent administrative hearing, counsel for the Plaintiff indicated that "this is a case for a closed period of disability benefits . . . when Claimant was unemployed."  A.R. at 385.  Counsel further explained that "she is managing to do work, although somewhat accommodated" and that the work would probably qualify as substantial gainful employment "especially given the length of time she's held her current employment."  *Id.*  The Court nevertheless need not resolve this discrepancy based on its resolution of the parties' motions.

with edema and cellulitis, and prescribed medication for these conditions.[4]  *Id.* at 144; 173-186.

Plaintiff continued receiving treatment and medication for these conditions through July 21,

2000.  *Id.* at 301-34.

A number of physicians examined Plaintiff and evaluated her medical history in

connection with ongoing treatment and her disability claims.  On August 4, 1998, Dr. Henry R.

Herbert, M.D., an occupational medicine specialist, examined Plaintiff.  *Id.* at 143-45.  Dr.

Herbert noted that Plaintiff retained "complete range of motion of her lower extremities" and that

the "[r]ange of motion of the back is compromised in that she can only bring her hands to the

level of her knees."  *Id.* at 144.  Dr. Herbert indicated that Plaintiff "is not able to perform a job

which would require extended periods of standing or walking, [though] she appears to be able to

perform sedentary work with no lifting, pushing, pulling or carrying more than 10 lb."  *Id.* at 143.

On November 6, 1998, R.S. Kadian, M.D., a state agency physician, evaluated Plaintiff's

medical history to determine her physical residual function capacity ("RFC").  With regard to

specific exertional limitations, Dr. Kadian determined that Plaintiff could occasionally lift 10

pounds, frequently lift less than 10 pounds, stand or walk for at least 2 hours in an 8-hour

workday, sit for a total of about 6 hours in an 8-hour workday and engage in an unlimited amount

of pushing and pulling.  A.R. at 220.  In his report, Dr. Kadian reduced Plaintiff's RFC to

"sedentary" because of the pain in her legs and back and her inability to stand and walk for

prolonged periods of time.  A.R. at 225.  Dr. Kadian indicated that "[n]o further reduction in

RFC or finding of total disability is supported by objective medical findings."  *Id.*

---

[4] The record also indicates that the ALJ, as well as the Plaintiff's psychiatrist, Dr. Mark
Publicker, M.D., characterized the swelling in Plaintiff's legs as "lymphedema." *Id.* at 18; 144-
47.

On July 7, 1999, Dr. Dev Chhabra, M.D., a state agency medical consultant, examined the

Plaintiff and ordered an x-ray of her spine. *Id.* at 217-18. Dr. Chhabra reported that the x-ray

showed "mild DJD [degenerative joint disease] . . . and mild scoliosis." *Id.* at 217. Dr. Chhabra

concluded that "the patient can sit, stand and walk with [a] normal gait, and has a history of

bipolar disorder. The symptoms are under control with medication." *Id.* at 218.

On May 9, 2000, Dr. Martin H. Stein, M.D., who was treating Plaintiff for her affective

disorder, referred her to Kaiser Medical because of "at least 50-100 scratch induced scars on each

leg . . . .and cellulitis on her left shin." *Id.* at 291. Dr. Stein also indicated that he was "treating

her aggressively for her obsessive picking which may be the origin of her infection." *Id.* at 292.

Plaintiff subsequently received antibiotics for the lesions on her legs, and, on May 12, 2000, and

again on May 15, 2000, her doctor noted that Plaintiff's condition was improving. *See id.* at 308-

9. On June 6, 2000, after a visit with Plaintiff, Dr. Stein reported that "[h]er legs are no longer

erythematous. She remains in treatment with Kaiser . . . . She reports her picking on her skin has

decreased." *Id.* at 293.

2.    <u>Mental Health Records</u>

The records indicate that several mental health specialists have evaluated Plaintiff during

the period of alleged disability. *See id.* at 139-72; 198-215; 227-58; 269-95. Plaintiff visited Dr.

Mark Publicker, M.D., a psychiatrist, at least once every six months from March 11, 1996, to

February 11, 1999, and kept in "weekly telephone contact" with him during this time. *Id.* at 232;

*see id.* at 139-72. According to the records, one purpose of these visits was to evaluate how

Plaintiff was responding to prescribed medications for anxiety and bipolar disorder. *See id.* at

139-72. On October 22, 1998, Dr. Publicker reported that Plaintiff was "stable on klonapin for

panic," "calm, . . . organized, unpressured, [with] no thought process disturbance."  *Id.* at 142.

During this evaluation, he also indicated that the Plaintiff's Global Assessment of Function

("GAF") was 75,[5]  the highest it had been during the past twelve months.  A.R. at 142.

On October 28, 1998, Dr. Carlos Hecker, M.D., a psychiatrist, evaluated the Plaintiff.  *Id.*

at 198-201.  Dr. Hecker reported that Plaintiff

> cried intermittently during the session . . . . She was fully oriented and had
> essentially an intact recent and remote memory. At times, it was difficult for her to
> concentrate and she appeared to be distracted. Her mood was distinctly sad and
> her affect responded accordingly. She had no psychotic process including
> hallucinations and delusions. Her insight was fair and her judgment was fair as
> well. Her intelligence appeared to be average. There were no unusual mannerisms
> of speech and behavior.

*Id.* at 200.  According to Dr. Hecker's report, Plaintiff indicated that her "depression ha[d]

improved greatly" because of medication prescribed over the past two years.  *Id.* at 198.

Additionally, Dr. Hecker  indicated that the Plaintiff's Global Assessment of Function ("GAF")

was 50.[6]  A.R. at 200.

On November 2, 1998, Taras J. Cerkevitch, Ph.D., a psychologist, evaluated Plaintiff's

file and completed a psychiatric review technique form.  *Id.* at 202-215.  Dr. Cerkevitch's form

indicates that Plaintiff's mental impairments were severe, but that they were not severe enough to

meet or equal a listed impairment.  *Id.* at 209.  Specifically, Dr. Cerkevitch's report indicated that

---

[5]A GAF rating between 71 and 80 reflects "no more than slight impairment in social, occupational or school funtioning."  Def.'s Mot. at 14 n.8 (citing Diagnostic and Statistical Manual of Mental Disorders, Fourth Ed., Am. Psych. Assoc., p. 32).

[6]A GAF rating of 41 to 50 is assessed to reflect "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any severe impairment in social functioning (e.g., no friends, unable to keep a job)."  Def.'s Mot. at 17 n.10 (citing Diagnostic and Statistical Manual of Mental Disorders, Fourth Ed., Am. Psych. Assoc., p. 32); Pl.'s Mot. at 7 n.2.

Plaintiff: (1) experienced a "Slight" "Restriction of Activities of Daily Living," (2) showed "Moderate" "Difficulties in Maintaining Social Functioning," (3) "Often" exhibited "Deficiencies of Concentration, Persistence or Pace," and (4) "Never" suffered from "Episodes of Deterioration or Decompensation in Work or Work-Like Settings." *Id.* at 209. *See generally* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.08 (requiring a finding of "marked" difficulties or "repeated" episodes of deterioration before a disability determination). Accordingly, Dr. Cerkevitch conducted a mental RFC ("MRFC") assessment based on Plaintiff's affective and personality disorders. *See* A.R. at 202, 211. According to Dr. Cerkevitch's MRFC assessment, Plaintiff was "Moderately Limited" in ten of the twenty listed mental activities, but "Markedly Limited" in none of the categories. *Id.* at 211-12. In summary, Dr. Cerkevitch reports that Plaintiff had "enough MFRC to understand, recall . . . & persist on simple tasks," "can adapt . . . to most environments and can maintain social interaction in low demand environments. . . ." *Id.* at 213.

On February 11, 1999, Dr. Publicker examined Plaintiff, and indicated in his progress notes that her bipolar disorder was "in remission" and that her GAF was 65.[7] *Id.* at 139. Subsequently, Dr. Publicker filled out an evaluation, in the form of a checklist, regarding Plaintiff's bipolar disorder, and characterized her condition differently than he had previously. *See id.* at 232-34. According to this checklist, Plaintiff's condition resulted in a "[m]arked

---

[7] A GAF rating between 61 and 70 indicates that a patient is suffering from "some mild symptoms (e.g., depressed mood and mild insomnia)" or "some difficulty in social, occupational or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well and has some meaningful interpersonal relationships." Def.'s Mot. at 14 n.9 (citing Diagnostic and Statistical Manual of Mental Disorders, Fourth Ed., Am. Psych. Assoc., p. 32).

restriction of daily living," "[m]arked difficulties in maintaining social functioning,"

"[d]eficiencies of concentration, persistence or pace" and "[r]epeated episodes of deterioration or

decompensation in work or work-like settings." *Id.* at 234.  Dr. Publicker added that Plaintiff

had an "[i]mpaired ability to maintain employment." *Id.*  In the comment section of the

evaluation, Dr. Publicker remarked that Plaintiff has "has adhered to medication management."

*Id.*

Similarly, on January 28, 2000, Plaintiff visited Dr. Stein, who subsequently filled out

evaluations of Plaintiff's mental status, her ability to do work-related activities, and her response

to medications.  *Id.* at 227-31; 285-87.  Dr. Stein's report shows that he examined Plaintiff every

other week since November 2, 1999.  *Id.* at 229.  On the mental assessment checklist, Dr. Stein

indicated that Plaintiff suffered from all but one of the thirteen listed symptoms.[8]  Additionally,

Dr. Stein's checklist indicates that these symptoms caused a marked restriction of activities of

daily living, marked difficulties in maintaining social functioning, deficiencies of concentration,

persistence or pace and repeated episodes of deterioration or decompensation in work or work-

like settings.  *Id.* at 231.  Describing Plaintiff as a "[m]ultiproblem patient," Dr. Stein's diagnosis

included, "[p]ost traumatic stress disorder, OCD, Depression, Migraine, [and] seizure disorder."

*Id.* at 229-31.  Finally, Dr. Stein concluded, "[s]he is <u>not</u> employable." *Id.* at 231 (emphasis in

original).  On a checklist designed to rate a patient's ability to perform or adjust to work-related

---

[8] Dr. Stein indicated that Plaintiff suffered from anhedonia, sleep disturbance, pyschomotor agitation or retardation, decreased energy, feelings of guilt or worthlessness, difficulty concentrating or thinking, thoughts of suicide, hallucinations, delusions or paranoid thinking, hyperactivity, pressure of speech, flight of ideas, easy distractibility, involvement in activities that have a high probability of painful consequences which are not recognized. *Id.* at 229-230. Dr. Stein did not indicate whether or not Plaintiff suffered from appetite disturbance with change in weight. *Id.* at 229.

activities, Dr. Stein indicated the lowest possible level, "Poor/None" for each of the 15 listed abilities. *Id.* at 227-28. In response to the form's request to "[d]escribe any limitations and include the medical/clinical findings that support the above assessments," Dr. Stein responded that Plaintiff "[h]as post traumatic stress disorder, seizures and inability to screen out stress." *Id.* at 228. With regard to Plaintiff's response to medication, Dr. Stein's report notes, "she is a bit more at ease with effexor and prozac. Others have noted she is doing better. She is less impulsive and less driven. She appreciates the change with the medication. She states she is scratching less than before and more aware of the scratching." *Id.* at 285.

3.      Transcript of the Administrative Hearings in This Case

Plaintiff testified at two administrative hearings, once on August 8, 2000, and once on October 13, 2004. *Id.* at 347-86. At the first hearing, Plaintiff testified that she was a recovering heroin addict, currently enrolled in a methadone treatment program. *Id.* at 353-55. She indicated that she did not frequently leave her home, except to see her psychiatrist, attend twice-weekly Alcoholics Anonymous meetings and visit the methadone clinic. *Id.* Plaintiff testified that she walked with the aid of a cane, and that her neighbors assisted her with cooking, cleaning, shopping and transportation. *Id.* at 352. During the first hearing, the ALJ asked the VE if he could identify any jobs in the national economy that a hypothetical person who had the same age, education and work experience as the Plaintiff could perform. *Id.* at 358-59. Specifically, the ALJ asked the VE to consider someone who had "the capacity to do light work unskilled with limited general public contact." *Id.* The VE testified that such a person could be employed as an inspector or a bindery worker helper. *Id.* at 359.

At the second hearing, more than four years later, Plaintiff indicated that she was

11

currently employed full-time as a phone operator. *Id.* at 367. She testified that she cooked for

herself, and that her roommate did the cleaning and shopping. Plaintiff indicated that she now

attended Alcoholics Anonymous meetings three times a week. *Id.* at 367-69. Though she had no

cane with her on the day of the hearing, Plaintiff indicated that she sometimes used a cane to help

her walk. *Id.* at 369. Plaintiff testified that she had continued taking medication and receiving

therapy for her pain and depression. *Id.* When asked if this had made a difference, she

responded, "[i]t helps." *Id.* at 369. Plaintiff testified that because of her back pain, she could

only sit for one hour at her current job before having to get up and walk around. *Id.* at 371.

When asked by counsel how her depression affects her, Plaintiff said, "[d]epression is crippling

at times." *Id.* at 372. When asked if she got along well with others, Plaintiff said, "[w]ell, I get

along, because that's survival to me. And I get along if it suits me to get along." *Id.* at 376.

During the hearing, the ALJ asked the VE if she could identify any jobs in the national

economy that a hypothetical person who had the same age, education and work experience as the

Plaintiff could perform. *Id.* at 381. Specifically, the ALJ asked the VE to consider someone who

had "the capacity to perform light work unskilled with a sit, stand option." *Id.* The VE testified

that such a person could be employed as a router or dispatch clerk, office helper or non-postal

mail clerk. *Id.*

## II.  LEGAL STANDARD

"In a disability proceeding, the ALJ 'has the power and the duty to investigate fully all

matters in issue, and to develop the comprehensive record required for a fair determination of

disability.'" *Simms v. Sullivan*, 877 F.2d 1047, 1050 (D.C. Cir. 1989) (quoting *Diabo v. Sec'y of

HEW*, 627 F.2d 278, 281 (D.C. Cir. 1980)). The Social Security Act defines "disability" as an

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2004).  Inability to engage in substantial gainful activity not only includes the individual's inability to do his previous work, but requires as well an inability, "considering his age, education, and work experience, [to] engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* at § 423(d)(2)(A).  In making this determination, the ALJ is to consider (1) medical data and findings, (2) expert medical opinions, (3) subjective complaints, and (4) the plaintiff's age, education, and work history; however, "[t]he expert opinions of a treating physician are binding on the fact finder unless contradicted by substantial evidence to the contrary." *Davis v. Heckler*, 566 F. Supp. 1193, 1196 (D.D.C. 1983) (citing cases).

A court will not disturb the determination of the Commissioner if it is based on substantial evidence in the record and the correct application of the relevant legal standards.  42 U.S.C. §§ 405(g), 1383(c); *Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted).  While a scintilla of evidentiary support is insufficient, the test can be satisfied by "something less than a preponderance of the evidence." *Fla. Mun. Power Agency v. FERC*, 315 F.3d 362, 365-66 (D.C. Cir. 2003).  In reviewing an administrative decision, a court may not determine the weight of the evidence, nor substitute its judgment for that of the Secretary if her decision is based on

13

substantial evidence. *Butler*, 353 F.3d at 999; *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Instead, the reviewing court must carefully scrutinize the entire record to determine whether the Secretary, acting through the ALJ, has analyzed all the evidence and has sufficiently explained the weight he has given to obviously probative material. *Id*. "Because the broad purposes of the Social Security Act require a liberal construction in favor of disability, the court must view the evidence in the light most favorable to the claimant." *Martin v. Apfel*, 118 F. Supp. 2d 9, 13 (D.D.C. 2000) (citing *Davis v. Shalala*, 862 F. Supp. 1, 4 (D.D.C. 1994)).

The reviewing court must also determine whether credible evidence was properly considered. *Id.* (citing *Dionne v. Heckler*, 585 F. Supp. 1055 (D.Me. 1984)). The ALJ's final decision must contain "a statement of findings and conclusions, and the reasons or the basis therefor, on all material issues of fact, law, or discretion presented on the record." 5 U.S.C. § 557(c). Importantly, an ALJ cannot merely disregard evidence which does not support his conclusion. *Dionne*, 585 F. Supp. at 1060. A reviewing court should not be left guessing as to how the ALJ evaluated probative material, and it is reversible error for an ALJ to fail in his written decision to explain sufficiently the weight he has given to certain probative items of evidence. *Martin*, 118 F. Supp. 2d at 13 (citing *Davis*, 862 F. Supp. at 2).

### III. DISCUSSION

Plaintiff argues that the ALJ's decision should be reversed, or in the alternative remanded to the Social Security Administration for a new hearing, and makes three arguments in support of these requests. First, she argues that the ALJ failed to properly evaluate Plaintiff's RFC. *See* Pl.'s Mot. at 3-12. Second, she argues that the ALJ erred by posing a hypothetical question for the VE's analysis that inaccurately characterized Plaintiff's RFC. *Id.* at 12-14. Finally, Plaintiff

argues that the ALJ failed to consider the opinion of Plaintiff's treating physician. *Id.* at 14-19.

Defendant disputes Plaintiff's characterization of the ALJ's opinion, asserting that it was

supported by substantial evidence. *See generally* Def.'s Mot.

   A.  *The Residual Functional Capacity ("RFC") Analysis*

   To make a determination under steps Four and Five of the disability analysis, which

involve an inquiry into the claimant's ability to return to past work and a determination of

whether future employment of any variety is possible, *see* 20 C.F.R. §§ 404.1520, 416.920, the

ALJ must engage in a residual functional capacity ("RFC") analysis.  20 C.F.R. §§ 404.1545,

416.945; SSR 96-8p, *Policy Interpretation Ruling Titles II and XVI: Assessing Residual*

*Functional Capacity in Initial Claims*, 1996 WL 374184 at *2 (S.S.A. July 2, 1996).  An RFC is

"an administrative assessment of the extent to which an individual's medically determinable

impairment(s), including any related symptoms, such as pain, may cause physical or mental

limitations or restrictions that may affect his or her capacity to do work-related physical or

mental activities."  SSR 96-8p, 1996 WL 374184 at *2.  The ALJ must explain how he

considered and resolved ambiguities in the record with regard to the ultimate RFC decision.

*Butler*, 353 F.3d at 1000.

   Plaintiff raises three main arguments challenging the ALJ's RFC analysis.  First, she

argues that the ALJ was required to, but did not, perform a function-by-function assessment of

Plaintiff's ability to work, and include a narrative discussion of how the evidence supported the

ALJ's RFC conclusion.  Pl.'s Mot. at 3-7.  Second, she argues that the ALJ ignored evidence

regarding the extent of Plaintiff's mental impairments.  *Id.* at 7-10.  Finally, she argues that the

ALJ failed to engage in a detailed assessment of Plaintiff's capacity to perform the mental

demands of work. *Id.* at 10-12.

The Court finds that the ALJ performed a sufficient function-by-function assessment of

Plaintiff's exertional and non-exertional abilities as well as sufficient narrative in support thereof.

Plaintiff is correct that SSR 96-8p requires the ALJ to first assess a claimant's "work-related

abilities on a function-by-function basis" and instructs that "[o]nly after that may RFC be

expressed in terms of exertional levels of work . . . ." SSR 96-8p, 1996 WL 374184 at *1.[9]

However, SSR 96-8p also provides "[w]hen there is no allegation of a physical or mental

limitation or restriction of a specific functional capacity, and no information in the case record

that there is such a limitation or restriction, the adjudicator must consider the individual to have

no limitation or restriction with respect to that functional capacity." *Id.*

The Court finds that the ALJ performed a sufficient function-by-function assessment of

all functions for which the record included evidence of limitations.  The ALJ's conclusion

regarding Plaintiff's physical RFC stated:

> In setting the claimant's residual functional capacity, the undersigned has also
> considered any medical opinions, which are statements from acceptable medical
> sources, which reflect judgments about the nature and severity of the impairments
> and resulting limitations . . . . No treating or examining physician has placed any
> permanent physical restrictions on the claimant . . . . While it is noted that the
> state agency medical experts below limited the claimant to sedentary exertion . . .,
> I am persuaded by the overall record that she retains the residual functional
> capacity for light work, lifting and/or carrying up to twenty pounds occasionally
> and ten pounds frequently.  I do afford the claimant a sit/stand option with regard
> to her complaints of persistent back pain and difficulty with standing/walking due

---

[9] SSR 96-8p specifically instructs the ALJ to consider the functions in paragraphs (b), (c), and (d) of 20 C.F.R. § 416.945, which include physical abilities (sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions including manipulative or postural functions), mental abilities (understanding, remembering, carrying out instructions, responding appropriately to supervision, coworkers, and work pressures in a work setting), and other abilities affected by impairments (including specifically, impairments of vision).  20 C.F.R. § 416.945.

> to the swelling in her legs.  However, I do not find further physical limitation to
> be warranted given the opinion of Dr. Chhabra that the claimant can
> sit/stand/walk with normal gait . . . . Only "mild" joint disease and scoliosis is
> noted on the x-ray and neurological examination is non-focal.  She has had very
> limited conservative treatment for pain complaints and has not undergone further
> evaluation or workup of her pain symptoms, such as physical therapy or pain
> management.  She also reports that she returned to work three years ago.
> Medication appears to be effective in controlling her pain symptoms and she
> continues to work full time.

A.R. at 21.  Plaintiff contends that the ALJ failed to set forth any rationale as to how the evidence

supports each of his conclusions.  Pl.'s Mot. at 6-7.  However, even a cursory glance at the

passage above reveals that the ALJ considered Dr. Chhabra's examination and Plaintiff's return

to her job when assessing Plaintiff's ability to perform light work, and considered her swelling

and back pain when affording her the sit/stand option.

The ALJ's opinion also considered Plaintiff's mental impairments in analyzing her RFC.

The ALJ's opinion stated:

> With regard to her psychiatric symptoms, the record does not show continuing
> treatment since 2000 and she reports current effectiveness of psychotropic
> medication.  She reports some continued problems dealing with past abuse issues,
> but subjectively notes that she gets along well with others.  She reports problems
> with focus and in dealing with stress, but as noted, it appears that she is capable of
> fully carrying out her current job duties without significant difficulty.  She is also
> capable of independently caring for her basic daily needs.  While the state agency
> psychological expert [Dr. Cerkevitch] assessed numerous "moderate" limitations
> as noted in Exhibit 4F, I find that the claimant retains the residual mental capacity
> to carry out simple work-related tasks with limited general public contact.  I reject
> the essentially "disabling" assessments contained in the record at Exhibits 7F, 8F,
> 9F, as these assessments are not well-supported by objective findings and/or
> treatment records and appear to overly rely on the claimant's subjective
> complaints.

A.R. at 21.  The ALJ also stressed that he did not fully credit the testimony concerning Plaintiff's

subjective complaints:

17

In reviewing the testimony I find the credibility of the claimant's subjective complaints (and allegedly related functional limitations) to be only fair at best. While I accept that the claimant has limitations from her physical and mental condition, I do not accept that such limitations are of 'disabling' severity as alleged. As noted, the claimant reports that she is currently employed on a full time basis as a telephone operator . . . Per her reports, she remains capable of caring for her basic needs and notes effectiveness of medication in alleviating her physical pain symptoms and psychiatric symptoms as well. Apparently, her symptoms are adequately controlled with treatment/medication as evidenced by her ability to engage in full-time work. Accordingly, full credibility is not afforded to the claimant's subjective statements, especially with regard to 'disabling' impairment, and I am persuaded that I have adequately accounted for the claimant's limitations in . . . her residual functional capacity.

A.R. 21.

Based on the ALJ's opinion, and particularly the passages quoted at length above, the Court finds that the ALJ identified inconsistencies in the record and explained how he arrived at his conclusions. The ALJ acknowledged the assessments of Dr. Stein and Dr. Publicker and the conclusion in these reports that Plaintiff was not employable, A.R. 239, and that she had an impaired ability to maintain employment, *id.* at 234. Nevertheless, the ALJ found that these conclusions were not well-supported by the evidence (and testimony) in the record. And although Plaintiff asserts that the ALJ "provided no explanation or rationale for ignoring the[] limitations" contained within Dr. Cerkevitch's report, a review of the ALJ's opinion reveals otherwise. Pl.'s Mot. at 8. It is manifest that the ALJ considered these limitations, but situated them within the context of Plaintiff's subsequent success with psychotropic medication and ability to return to work.

Plaintiff next contends that the ALJ "ignored pertinent evidence" in conducting the RFC analysis, focusing on the reports of Dr. Cerkevitch and Dr. Heckler. Pl.'s Mot. at 7. With respect to Dr. Cerkevitch, Plaintiff simply paints an inaccurate picture of the ALJ's reliance on

Dr. Cerkevitch's assessment.  Regarding the severity of Plaintiff's limitations, Dr. Cerkevitch

noted that Plaintiff "has enough MFRC to understand, recall . . . & persist on simple tasks . . .

[and] can adapt . . . to most environments and can maintain social interaction in low demand

environments . . . ."  While Plaintiff argues that the ALJ ignored this assessment, it is clear from

the ALJ's findings that he expressly relied upon Dr. Cerkevitch's assessment of Plaintiff's

limitations and incorporated them into his RFC assessment.

     With respect Dr. Heckler, Plaintiff asserts that the ALJ ignored Dr. Hecker's diagnosis of

dysthymic disorder, recurrent major depressive episodes, and assessment of Plaintiff's GAF at

50.  While the ALJ did not specifically incorporate the findings of Dr. Hecker into his opinion, it

is not apparent to the Court how the report of Dr. Hecker "clearly contradicted" the ALJ's

conclusions as Plaintiff asserts.  Pl.'s Mot. at 9.  Dr. Hecker's report, like the other mental

evaluations contained within the record, indicated that Plaintiff had severe mental impairments.

But while Dr. Hecker's report indicated that Plaintiff suffered from severe depression, it also

noted that this depression "had improved greatly" with medication and treatment.  A.R. at 198.

This is entirely consistent with the ALJ's finding that "the claimant has had 'severe' mental

impairment at all times relevant to this decision," but that "her symptoms are adequately

controlled with treatment/medication . . . ."  *Id.* at 18, 21.[10]

     Plaintiff also argues that the ALJ failed to engage in the "more detailed" assessment of

the Plaintiff's mental limitations as required by SSR 96-8p.  Pl.'s Mot. at 11; *see* SSR 96-8p,

---

[10] Plaintiff quotes extensively from cases holding that contradictory medical evidence cannot be ignored by the ALJ.  *See* Pl.'s Mot. at 8-9 (quoting *Butler*, 353 F.3d at 1002; *See v. Washington Metro. Transit Auth.*, 36 F.3d 375. 384 (4th Cir. 1994)).  In this case, however, the Court finds that the ALJ's RFC analysis thoroughly considered all probative evidence and resolved ambiguities or contradictions where they existed, rendering these cases inapposite.

1996 WL 374184 at *2.  Specifically, Plaintiff contends that the ALJ "cumulated [sic] the Plaintiff's mental impairments into a less-detailed conclusion that the Plaintiff was limited to simple tasks with limited public contact."  Pl.'s Mot. at 11-12.  Upon reviewing the ALJ's opinion, the Court finds that the ALJ engaged in a sufficient assessment of the relevant evidence in the record.  *See* A.R. at 19.  In regard to Plaintiff's activities of daily living, the ALJ noted, "[s]he is also capable of independently caring for her basic daily needs."  With respect to Plaintiff's social functioning, the ALJ pointed out that Plaintiff "subjectively notes that she gets along well with others."  With respect to her concentration, persistence and pace, the ALJ noted that it "appears that she is capable of fully carrying out her current job duties without significant difficulty."

Plaintiff is correct that the ALJ did not specifically list the work-related functions itemized on Dr. Cerkevitch's Mental Residual Functional Capacity Assessment.  *See* A.R. at 211-12.  Plaintiff does not, however, cite any case supporting the supposition that an ALJ's opinion must include such an itemization.  The ALJ specifically incorporated Dr. Cerkevitch's mental RFC assessment in his opinion.  *Id.* at 21 ("[T]he state agency psychological expert assessed numerous "moderate" limitations.").  The Court notes that none of Plaintiff's functions in Dr. Cerkevitch's assessment were deemed "markedly limited."  *Id.*  at 211-12.  Furthermore, given Plaintiff's return to full-time employment subsequent to Dr. Cerkevitch's evaluation, the ALJ was justified in not performing an itemized evaluation of Plaintiff's work-related abilities.  Her ability to perform work-related tasks was made evident to the ALJ from her ability to maintain a job for approximately three years.

B.      *The ALJ's Hypothetical Question to the Vocational Expert*

The Commissioner bears the burden under Step Five of the disability analysis to show

that there are other jobs available in the national economy that can be performed by an individual

with the claimant's impairments.  *Brown v. Bowen*, 794 F.2d 703, 706 (D.C. Cir. 1986) (citing 20

C.F.R. §§ 404.1520(f), 416.920(f)).  In this case, the ALJ relied in part on the testimony of the

VE, which the ALJ found to be credible.  A.R. at 22.  Plaintiff now disputes the substance of the

hypothetical question posed by the ALJ:

> Assume a hypothetical person who has the same age, education, and work
> experience as the [Plaintiff], and who has the capacity to perform light work
> unskilled with a sit/stand option.  Can you identify any jobs that such a
> hypothetical person can perform on a sustained basis and which jobs exist in
> significant numbers in the national economy?

A.R. 381.  Plaintiff argues that this question failed to incorporate the restrictions and limitations

identified by Dr. Hecker and Dr. Cerkevitch in two ways:  (1) the question did not expressly

incorporate Plaintiff's "need for limited general public contact" and (2) the question did not

incorporate a "limitation to simple work-related tasks."  Pl.'s Mot. at 12-14.  The Court finds

neither argument to be meritorious.

Plaintiff's first argument fails because–as Defendant explains and Plaintiff does not

dispute–the jobs listed by the VE (router, office helper, and non-postal mail clerk) do *not* require

significant public contact.  *See* Def.'s Mot. at 11 (relying on the *Dictionary of Occupational

Titles* published by the Department of Labor).  Thus, it appears that the VE may have

incorporated this limitation into her response based on her observations at the administrative

hearing, A.R. 381 ("[t]he record will reflect that this VE has been present the entire proceedings

today"), and her review of the Plaintiff's administrative folder, *id.* ("Q: Did you review the

[Plaintiff's] exhibit folder prior to this hearing?  A: Yes.").  Equally problematic for Plaintiff's

argument is that there is also substantial evidence in the record that supports the ALJ's

determination *not* to include a specific reference to this limitation in his hypothetical.  Most

notably, Plaintiff conceded that she had been employed as a phone operator since 2002, which

the ALJ noted "would involve dealing with individuals over the phone."  A.R. at 19.  Plaintiff

also testified that she gets along with others, *id.* at 376, and a report from the director of her

psychotherapy group noted that "she has also become an asset to other members of the group,

through support and positive feedback."  *Id.* at 327.[11]  Plaintiff's second argument concerning the

ALJ's omission of "simple work-related tasks" from his hypothetical question is even farther

afield because the ALJ's hypothetical *did* incorporate the need for a job requiring only simple

tasks when he asked the VE to consider only "light work unskilled."  *See* Def.'s Mot. at 12.

Plaintiff does not argue that the jobs listed by the VE in response to the ALJ's hypothetical

question require more than simple work-related tasks.  Accordingly, the Court finds that the

ALJ's hypothetical accurately described Plaintiff's condition and that the ALJ properly relied

upon the VE's response regarding the availability of jobs available in the national economy.[12]

---

[11] Plaintiff's argument is also unpersuasive because the ALJ expressly incorporated the "limited general public contact" limitation into his hypothetical during Plaintiff's first administrative hearing, and the VE's response indicated that there were jobs that existed in significant numbers in the national economy despite a limited general public contact restriction. A.R. at 358-59.

[12] The Court notes that Plaintiff cites several cases that stand for the proposition that a "response to a fatally defective question cannot constitute substantial evidence." Pl.'s Mot. at 12-13.  Plaintiff fails to draw any factual comparisons to these cases, or to otherwise indicate how they might be of use to the Court in the present case.  Because the Court finds substantial evidence that the ALJ's hypothetical accurately reflected Plaintiff's impairments, the Court finds the cases cited by Plaintiff to be inapposite.

C.       *Weight of Medical Opinions*

Plaintiff argues that the ALJ erred in failing to accord controlling weight, or any

consideration whatsoever, to the opinions of Plaintiff's treating physicians.  *See* Pl.'s Mot. at 14-

15.  Defendants argue that the opinions of treating physicians were thoroughly considered, but

that those conclusions unsupported by objective medical findings were properly accorded less

than controlling weight.  *See* Def.'s Mot. at 13-17.

Plaintiff's argument that the medical opinions of Dr. Stein and Dr. Publicker were

ignored is without merit.  The ALJ considered and explicitly rejected the "essentially 'disabling'

assessments contained in the record at Exhibits 7F, 8F, 9F, as these assessments [were] not well-

supported by objective findings and/or treatment records and appear[ed] to overly rely on the

claimant's subjective complaints." A.R. at 21.  Although Plaintiff is correct that this circuit has

adopted a "treating physician" rule whereby the "reports of treating physicians must be accorded

substantial weight," where, as here, a treating physician's opinion is contradicted by substantial

evidence, it is *not* binding on the ALJ.  *Williams v. Shalala*, 997 F.2d 1494, 1498 (D.C. Cir.

1993).  In the present case, there are inconsistencies between the objective medical findings and

Dr. Stein and Dr. Publicker's conclusions that Plaintiff was unable to work.[13]  Def.'s Mot. at 13-

14.  Furthermore, as Defendant correctly points out, the conclusions rejected by the ALJ were not

medical opinions, but conclusions regarding Plaintiff's ability or inability to work.  According to

Social Security Agency regulations, "[a] statement by a medical source that you are 'disabled' or

[13]For example, Dr. Publicker's report of February 11, 1999 indicates that Plaintiff's
bipolar disorder was "in remission" and that she had "no thought process disturbance." A.R. at
139.  These medical observations do not support Dr. Publicker's subsequent report that Plaintiff
had an "[i]mpaired ability to maintain employment." *Id.* at 234.

'unable to work' does not mean that we will determine that you are disabled."  20 C.F.R. §§

404.1527(e)(1), 4165.927(e)(1).

Regarding the medical opinions of Dr. Stein, Dr. Publicker and other doctors, Plaintiff

cites no specific mental impairments that the ALJ failed to consider or weigh.  Instead, Plaintiff

argues generally that "[e]ach . . . physician[] determined that the Plaintiff's mental impairment

was more limiting than the Administrative Law Judge found."  Pl.'s Mot. at 15.  There is

substantial evidence in the record, most notably from Dr. Stein and Dr. Publicker, to support the

ALJ's determination that Plaintiff was adequately controlling her symptoms with the help of

medication.  *See* A.R. at 142 (characterizing Plaintiff as "stable on klonapin for panic"), *id.* at

285 ("[S]he is a bit more at ease with effexor and prozac. Others have noted she is doing better.

She is less impulsive and less driven. She appreciates the change with the medication.").  At

bottom, the ALJ acknowledged all of the medical opinions in the record, explained why he

viewed certain evidence as more credible than other evidence, and adequately explained why he

did not give "controlling weight" to the essentially "disabling" assessments of Dr. Stein and Dr.

Publicker.

Finally, Plaintiff argues that "controlling weight" must be given to treating physicians

under SSR 96-2p.  Plaintiff fails, however, to establish that the opinions of Dr. Stein and Dr.

Publicker qualify for consideration under this provision.  According to SSR 96-2p, which

Plaintiff quotes, "[i]t is an error to give an opinion controlling weight simply because it is the

opinion of a treating source if it is not well-supported by medically acceptable clinical and

laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the

case record."  SSR 96-2p 1996 WL 374188 *2.  Because the ALJ found that the opinions of Dr.

Stein and Dr. Publicker were not "well-supported by objective findings and/or treatment records and appear[ed] to overly rely on the claimant's subjective complaints," he was justified in according them less weight in his analysis.

### IV: CONCLUSION

Based on the foregoing review of the relevant law and the administrative record, the Court finds that the Administrative Law Judge applied the correct legal standards and relied on substantial evidence when he denied Plaintiff's claims for Disability Income Benefits and Supplemental Security Income Benefits.  The Court shall DENY [7] Plaintiff's Motion for Judgment of Reversal and GRANT [10] Defendant's Motion for Judgment of Affirmance.  This case shall be dismissed in its entirety.  An appropriate Order accompanies this Memorandum Opinion.

Date: March 31, 2009

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge